**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**STEVEN PINDER**                                                                 **PETITIONER**

**VS.**                           **CASE NO. 5:09CV00140 SWW/HDY**

**LARRY NORRIS, Director of the**
**Arkansas Department of Correction**                              **RESPONDENT**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge Susan Webber Wright.  Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge  (if such a  hearing is granted)  was not  offered at  the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof,  and a copy,  or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary

hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

Now before the Court is the application for writ of habeas corpus pursuant to 28 U.S.C. §2254 of Steven Pinder, an inmate in the custody of the Arkansas Department of Correction (ADC). Mr. Pinder was found guilty of two counts of rape and sentenced to life imprisonment following an August, 2002 jury trial in the Circuit Court of Columbia County.   Mr. Pinder unsuccessfully appealed the conviction, alleging there was insufficient evidence to find him guilty of the two counts of rape. *Pinder v. State*, 357 Ark. 275 (2004). Mr. Pinder then filed a Rule 37 petition in state court. On April 11, 2007, the trial court denied Rule 37 relief.  On May 22, 2008, the Arkansas Supreme Court affirmed the trial court's ruling, finding no merit in the three points raised on appeal by Mr. Pinder: (1) that the record was not certified as a true, correct, and complete record; (2) that the trial court's order failed to conform to Ark. R. Crim. P. 37.3©; and (3) that the trial court erred in denying postconviction relief because there was insufficient evidence. See Respondent's Exhibit E to docket entry no.15.  Mr. Pinder petitioned the United States Supreme Court for a writ of certiorari, which was denied on October 6, 2008.

Mr. Pinder now advances the following claims for federal habeas corpus relief:

1.    The evidence is insufficient to support either of his rape convictions;

2.     He was denied effective assistance of trial counsel (this claim has twenty two sub-arguments);

3.    He was denied effective assistance of appellate counsel;

4.    He was denied due process of law during the trial;

5.    He was denied a fair trial;

6.    The state appellate court's decision to deny him postconviction relief was an unreasonable application of United States Supreme Court precedent;

7.    He was denied due process of law during the postconviction proceedings;

8.    He was denied due process of law during the postconviction appeal; and

9.    The trial court's order denying postconviction relief denied him due process.

The respondent contends that ground two, sub-arguments 4-23, grounds three, seven, and nine are not properly before this Court due to the petitioner's failure to adequately raise these grounds and sub-arguments in state court, as required by *Wainwright v. Sykes*, 433 U.S. 72 (1977), and its progeny.  By earlier order of the Court, Mr. Pinder was notified that dismissal of these claims was possible due to the apparent procedural default.  Mr. Pinder was further informed of his opportunity to explain why these grounds should not be dismissed, and he filed a responsive pleading addressing the issue.  (Docket entry no. 20).  In this pleading, Mr. Pinder offers at least eight reasons why the designated claims should not be dismissed due to procedural default.  Many of these arguments are intertwined with the claims advanced in his petition.  In considering this issue, we are guided by the following language of the Eighth Circuit Court of Appeals:

> In cases such as this, it might well be easier and more efficient to reach the merits than to go through the studied process required by the procedural default doctrine.  Recent commentary points up the problems with the cause and prejudice standard:
> [T]he decision tree for habeas review of defaulted claims is intricate and costly. . . .  In essence, *Sykes* and *Strickland* require habeas lawyers and federal judges and magistrates to work through the equivalent of a law school exam every time a defendant tries to escape procedural default.

*McKinnon v. Lockhart*, 921 F.2d 830, 833 n.7 (8th Cir. 1990) (quoting Jeffries & Stuntz, *Ineffective Assistance and Procedural Default in Federal Habeas Corpus*, 57 U.Chi.L.Rev. 679, 690 (1990)).  In this instance, we find it more efficient to simply address the merits of the claims raised by Mr. Pinder.  As a result, we will forego the procedural default analysis.

**Ground 1:**  The initial claim submitted by Mr. Pinder is that the evidence is insufficient to support either of his rape convictions.  The Arkansas Supreme Court, on direct appeal, considered the sufficiency of the evidence:

On November 16, 2001, Ashley Jackson, the victim's best friend, confided in Jo Ann Best, a school counselor, that A.P. had said her father was sexually abusing her. A.P. then admitted to Ms. Best, in the presence of Ashley, that appellant was sexually abusing her. Ms. Best notified the authorities, who questioned A.P. that same day.

Investigator Emily Hampton, employed by Crimes Against Children with the Arkansas State Police, questioned A.P. on the afternoon of November 16, 2001. Hampton contacted Doug Moore with Children and Family Services since Moore would be responsible for developing a health and safety plan, to ensure that A.P. would be safe and would have no contact with appellant. During the initial interview, the victim reported to Hampton that appellant had come into her room on various occasions. He had touched her with his hand, with his penis, and had touched his penis to her vaginal area.

Later that day, Pinder arrived at the school to pick up A.P. and her younger sister. Hampton explained to appellant the allegations that had been lodged against him. Hampton informed appellant that he would either have to leave the family home or the family would have to leave. Appellant agreed to leave the family home, but did not deny the allegations.

Special Agent Joe Lee Wright, a special investigator with the sex crime division, testified that he took a sample from A.P.'s mattress, where she indicated some of the incidents occurred, and the comforter to the State Crime Lab. Melissa Myhand, a forensic biologist with the Arkansas State Crime Lab, testified that she tested the mattress and it tested positive for semen in six spots. Forensic Biologist, Terry Rolfe, performed the testing to extract and identify Pinder's DNA. Rolfe also performed the testing to extract and identify the DNA in the semen that was found on the victim's mattress. Rolfe determined that the DNA identified from the mattress was consistent with the DNA that was extracted from Pinder's blood samples, with a 1 in 855 million probability.

Ivy McGee-Reed, a family medicine physician in Magnolia, examined A.P. on November 21, 2001. When Dr. McGee-Reed asked A.P., "Why are you here today?" she answered, "I'm here because my father touched me where he shouldn't have." A.P. informed Dr. McGee-Reed that appellant had touched her with his mouth, fingers, and penis. After a gynecological examination, the doctor found that A.P. did not have a hymen, indicating, on this young girl, that there had been some chronic or long-term sexual contact, as opposed to a tear which would have indicated more a recent or acute event.

At trial, Melissa Pinder, the victim's mother and wife of appellant, testified that A.P. first learned that Pinder was not her biological father at the examination conducted by Dr. McGee-Reed. Melissa also testified that approximately six months prior to November 2001, she awoke in the middle of the night and found appellant lying, naked, on A.P.'s bed. Melissa told appellant to get dressed and go to the living room, where Pinder stated, " This is going to sound sick, but I, you know, I have been having these sexual problems and I felt that if I just laid in here and pretended she was somebody else, maybe I could get an erection." After having this discussion with appellant, Melissa went to check if A.P. was awake and dressed. Melissa found A.P. dressed but asleep. The next morning, Melissa

4

asked A.P. if appellant was doing anything to her, to which she replied, "No."

Lisa Pinder, appellant's biological younger sister, testified that she was sexually assaulted by Pinder when she was twelve or thirteen. Lisa stated that appellant never raped her, but he did wake her in the night with his hands on her breasts and vaginal area. However, there was never a police report filed regarding this incident.

Vonnie Pinder, appellant's biological daughter, testified that she had "recollections during my childhood of being assaulted sexually by my father." Vonnie stated that the sexual abuse started when she was six years old. After Vonnie admitted the sexual abuse to her mother, the family left appellant. This abuse was reported in Louisiana, where it occurred, but was unfounded. At trial, Vonnie also admitted to being homosexual, a former drug addict, and an alcoholic. Finally, Vonnie testified that she heard her father was trying to contact her. In November 2001, Vonnie returned appellant's telephone call, where he stated that he was sorry "I made you suck my dick, I'm so sorry."

A.P. testified that she learned that appellant was not her biological father on the same day of the rape examination by Dr. McGee-Reed. The victim said that the sexual abuse started when she was about ten years old, and from ten to fourteen, the appellant would touch her chest and vaginal area with his hands, fingers, and mouth. When she was fourteen years old, appellant began having intercourse with her. A.P. testified that she remembered the incident, to which her mother has earlier testified, concerning the night the mother found appellant in her room naked. She said she was indeed awake, but pretended to be asleep. The victim testified that she did not report the abuse because she was scared and was afraid that appellant would not love her anymore.

Pinder's counsel moved for a directed verdict at the close of the State's case, which the trial court denied. The defense put on three witnesses, all stating that they knew appellant to be a truthful man. Appellant testified on his on behalf, denying all the allegations. Pinder stated that his DNA was on the victim's mattress because he had slept there and masturbated in the bed. Pinder further stated that Vonnie had contacted him the previous year and blamed him for her problems. Appellant mentioned that A.P. was probably just mad at him for not letting her sleep over at Ashley's house, for his not letting her play basketball, and for his not letting her get her hair frosted. Appellant then moved for a directed verdict, and again at the close of all the evidence, which the trial court denied.

*Count 1*

Appellant argues that there was insufficient evidence to find him guilty of Count 1, "On several occasions during the time period of the year 1998 to April 12, 2001, the defendant, Steven L. Pinder, committed the offense of Rape by engaging in sexual intercourse or deviate sexual activity with another person by forcible compulsion and who was less than fourteen (14) years of age against the peace and dignity of the State of Arkansas."

Appellant was charged with Rape, Ark.Code Ann. § 5-14-103, which states in part:

(a)(1) A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person:

(A) By forcible compulsion; or

(B) Who is incapable of consent because he or she is physically helpless, mentally defective, or mentally incapacitated; or

(C)(I) Who is less than fourteen (14) years of age.

Here, there is substantial evidence that appellant committed rape. Ark.Code Ann. § 5-14-101(1),(9) (Repl.1997) states:

(1) "Deviate sexual activity" means any act of sexual gratification involving:

(A) The penetration, however slight, of the anus or mouth of one person by the penis of another person; or

(B) The penetration, however slight, of the labia majora or anus of one person by any body member or foreign instrument manipulated by another person;

* * * *

"Sexual intercourse" means penetration, however slight, of the labia majora by a penis.

Pinder properly moved for a directed verdict at all necessary points during the trial. We have held that a motion for a directed verdict is a challenge to the sufficiency of the evidence. *Arnett v. State,* 353 Ark. 165, 122 S.W.3d 484 (2003); *Miles v. State,* 350 Ark. 243, 85 S.W.3d 907 (2002); *Britt v. State,* 344 Ark. 13, 38 S.W.3d 363 (2001). The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. *Arnett, supra.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict. *Id.*

According to the testimony at trial, appellant digitally penetrated A.P. numerous times before she was fourteen years old. A victim's uncorroborated testimony is sufficient to support a conviction if the statutory elements of the offense are satisfied. *Arnett,* 353 Ark. at 169, 122 S.W.3d 484. Even though appellant denied the allegations, the jury is not required to believe the self-serving

testimony. *Sera v. State,* 341 Ark. 415, 17 S.W.3d 61 (2000). Although appellant contradicted her testimony, the jury was free to believe all or part of the victim's testimony and disbelieve his assertions. *Butler v. State,* 349 Ark. 252, 82 S.W.3d 152 (2002). Furthermore, when a rape victim is less than fourteen years of age, as the victim in this case, forcible compulsion is not an element of proof. *Caldwell v. State,* 319 Ark. 243, 891 S.W.2d 42 (1995). Therefore, the trial court is affirmed.

*Count 2*

For his second point on appeal, appellant argues that there was insufficient evidence to support a guilty verdict of rape as alleged in Count 2, "On several occasions during the time period of April 13, 2001 to November 2001 and specifically, on or about November 11, 2001, the defendant, Steven L. Pinder, committed the offense of Rape by engaging in sexual intercourse or deviate sexual activity with another person by forcible compulsion against the peace and dignity of the State of Arkansas."

Appellant argues that the State was required to prove beyond a reasonable doubt that he engaged in sexual intercourse or deviate sexual activity with the victim by forcible compulsion. "Forcible compulsion" under the rape statute is defined as "physical force," which is further defined as "any bodily impact, restraint or confinement, or the threat thereof." Ark.Code Ann. 5-14-101(2) (1987); *Strawhacker v. State,* 304 Ark. 726, 804 S.W.2d 720 (1991). A victim's age and relationship to the assailant are key factors in weighing the sufficiency of the evidence in proving forcible compulsion, and age is an important factor in determining whether the victim consented to intercourse out of fear of harm. *Sublett v. State,* 337 Ark. 374, 989 S.W.2d 910 (1999).

Furthermore, when the assailant stands in *loco parentis* to a victim, the law regarding force is satisfied with less than a showing of the utmost physical resistance of which the victim is capable. *Caldwell,* 319 Ark. at 247, 891 S.W.2d at 45 (citing *Griswold v. State,* 290 Ark. 79, 716 S.W.2d 767 (1986)).

In this case, the victim testified that appellant had sexual intercourse with her a few days before November 16, 2001. Ashley Jackson and Investigator Emily Hampton testified that A.P. had told them that appellant had sexually abused her. Moreover, the DNA extracted from A.P.'s mattress, where the abuse occurred, tested positive for Pinder's DNA. Dr. McGee-Reed testified that the victim did not have a hymen, which indicates chronic or long-term sexual contact. The victim testified that she did not report the abuse because she was scared and was afraid that appellant would not love her anymore. Therefore, there was sufficient evidence to find appellant guilty of rape. Although a rape victim's testimony need not be corroborated to support a conviction, *Curtis v. State,* 301 Ark. 208, 783 S.W.2d 47 (1990), there is sufficient evidence that Pinder engaged in sexual intercourse with his fourteen-year-old stepdaughter. The trial court is affirmed.

*Pinder v. State*, 357 Ark. 275, 277-282 (Ark.2004).

When the state court has ruled on the merits of a petitioner's claims, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an

7

unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court."  28 U.S.C. § 2254(d)(1), (2).  The United States Supreme Court offers guidance in interpreting the statute:

> A state court decision will be "contrary to" our clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."  A state court decision will be an "unreasonable application of" our clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."
>
> . . . Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

*Penry v. Johnson*, 532 U.S. 782, 792-93 (citations omitted).

In this instance, the state court has thoroughly addressed the claims of insufficient evidence, and we have carefully reviewed the trial transcript and the other documents in the record.  The state court ruled correctly on direct appeal.  The evidence was more than sufficient to support the convictions.  Indeed, overwhelming is a more apt description than sufficient when describing the evidence adduced at trial[1].  In light of our finding that the state court ruled correctly, it follows that the petitioner has not demonstrated that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court."  Mr. Pinder falls far short of the requisite showing.  The convictions were founded on ample evidence, and there is no merit to petitioner's argument to the contrary.

---

[1]The Arkansas Supreme Court ably summarized the facts, including the petitioner's defense of his outright denial combined with calling three character witnesses. Omitted from the Arkansas Supreme Court's summary is the prosecution's calling of petitioner's older brother as a rebuttal witness to the character witnesses.  Bernard Pinder testified of his brother, "He's lied from the day he was born."  (Tr. 304).

**Ground 2:**  The petitioner next argues that he was denied effective assistance of trial counsel, citing twenty-two instances in which his attorney erred.  In order to prove ineffective assistance of counsel, petitioner must prove that (l) his attorney's actions were unreasonable when viewed in the totality of the circumstances; and (2) he was prejudiced because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different.  *Strickland v. Washington*, 466 U.S. 688 (l983); *Ryder v. Morris*, 752 F.2d 327, 33l (8th Cir. l985).  The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Kellogg v. Scurr*, 74l F.2d l099, ll0l (8th Cir. l984); *Bell v. Lockhart*, 74l F.2d ll05, ll06 (8th Cir. l984).  This presumption is created to "eliminate the distorting effects of hindsight," and recognizes that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Strickland*, 466 U.S. at 689; *Ryder*, 752 F.2d at 33l.

Prior to addressing the various claims separately, it is worth noting that all of the claims fail under the second prong of the *Strickland v. Washington* analysis.  This conclusion is directly linked to our previous discussion of the strong evidence adduced at trial.  In view of this evidence, the petitioner is unable to point to any one or a combination of the twenty-two alleged errors of his counsel and show a "reasonable probability" that the trial would have come to a different conclusion.  The trial transcript reveals that Mr. Pinder's attorney faced the daunting task of defending a client with a tremendous amount of evidence showing his guilt.  The defense offered by Mr. Pinder, testifying on his own behalf and suggesting that the victim may have a grudge against him, may have been the best option among the few available to him.  We conclude, therefore, that even if we were to presume that trial counsel acted unreasonably, none of the alleged errors and omissions of trial counsel prejudiced the petitioner within the meaning of *Strickland*.

**Ground 2(a):** Mr. Pinder claims his attorney was ineffective for failing to file a motion to

suppress evidence seized from his home pursuant to an illegal search.  This claim was raised in

petitioner's Rule 37 proceeding and considered by the Arkansas Supreme Court on appeal:

> Appellant's first claim of attorney error alleged a failure to seek to suppress bedding items that were seized by the police. The testimony at trial established that appellant's wife took the police officers to their home and that a mattress that was seized at that time had a semen stain with appellant's DNA. Appellant's defense at trial was that he had not had sex with the victim as she claimed and he testified that he had masturbated while on the mattress at a later date after the victim was no longer in the home.

> Because appellant admitted that the DNA was his at trial, the claim in his petition did not establish a basis to show that the jury's decision would have been different absent any error. Moreover, appellant failed to present any potential challenge to his wife's authority to consent to the search. Counsel is not ineffective for failing to make an argument that is meritless. *Camargo v. State,* 346 Ark. 118, 55 S.W.3d 255 (2001). In order to carry his burden and overcome the presumption of effectiveness, appellant's claim must have included a basis to support a successful challenge to appellant's wife's consent. The record therefore conclusively shows that this claim was without merit.

*Pinder v. State*, 2008 WL 2132816 (Ark.2008).  Since this claim has been adjudicated by the

state court, the petitioner must show the state court's decision "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court" or the state court's decision "was based on an unreasonable determination of the facts in

light of the evidence presented in the State court."  28 U.S.C. § 2254(d)(1), (2).  Here, Mr. Pinder

argues that his wife had abandoned her home prior to the search and was therefore without the

authority to consent to the search.  He does not cite a decision of the United States Supreme

Court in support of his construction of the law and facts.  We find the state court's ruling was not

contrary to or an unreasonable application of clearly established federal law.  In addition, the

petitioner fails to show the state court's ruling was based on an unreasonable determination of

the facts.  To the contrary, the facts adduced in state court support the finding that the search

occurred at the home of Pinder and his wife, and that the wife's consent to search the premises

properly authorized the search.

10

**Ground 2(b):** The petitioner argues that his attorney should have requested a jury instruction for a lesser-included offense.  The Arkansas Supreme Court considered this argument.  In view of Mr. Pinder's complete denial of sexual contact, the Arkansas Supreme Court found there was "no rational basis" for a lesser-included offense instruction.  *Pinder v. State*, 2008 WL 2132816 at page 3.  This decision is in accord with both clearly established federal law and the facts as presented at trial.  In this instance, the jury was presented a straightforward issue of whether Pinder raped his stepdaughter, which he denied.  His denial dictated that no lesser-included instruction would be given, and his attorney did not err in failing to request such an instruction.

**Ground 2©:** The petitioner urges his attorney failed by not seeking funds to employ a DNA expert.  The Arkansas Supreme Court addressed this claim and observed that petitioner conceded at trial that he had ejaculated on the bed and thus was not prejudiced by any failure of his attorney to contest the DNA results which confirmed his own testimony.  Given the testimony of the petitioner, his trial attorney did not err in failing to obtain funds for a DNA expert.  The state court ruling in this regards is not contrary to clearly established federal law and was not unreasonable based on the facts presented in state court.  To the contrary, the decision was reasonable under the circumstances.  This claim is without merit.

**Ground 2(d)[2]:** The petitioner contends his attorney was ineffective for failing to object to prosecutorial misconduct when the state solicited false and misleading testimony from Dr. Ivy McGee-Reed.  Dr. Reed's testimony was that the victim had experienced "chronic or long-term

---

[2]Grounds 2(a)-(c) were addressed by the Arkansas Supreme Court in its ruling affirming the trial court in the Rule 37 proceeding.  The petitioner originally raised three claims in the Rule 37 petition, then later amended numerous times, as well as seeking and obtaining the recusal of two judges during the Rule 37 proceedings.  Ultimately, the trial court issued a letter briefly denying relief.  On appeal, the Arkansas Supreme Court specifically addressed only three claims of the petitioner and noted that the trial court's letter ruling was not adequate under the pertinent Arkansas rules.  Due to this deficiency, the Arkansas Supreme Court examined the record and determined the record conclusively showed the Rule 37 petition was without merit.  Grounds 2(d) through (v) were not specifically addressed by the Arkansas Supreme Court.

sexual contact" consistent with her report of long-term sexual abuse by her stepfather.  (Tr. 163, 166).  This testimony was unrebutted at trial.  Mr. Pinder now asserts that a second examination of the victim, by a Dr. Jones, contradicted Dr. Reed's findings.  Mr. Pinder references Dr. Jones report but does not provide a copy.  The trial transcript does not refer to a second examination.  In essence, Mr. Pinder asks the Court to accept as true his allegation of events outside of the record.  Our role is not to function as a trial court but to consider whether the convictions rendered in state court violate the constitution.  As a result, we review the record but do not speculate on events or documents not contained therein.  The trial transcript does not support a claim that petitioner's attorney should have objected to the testimony of Dr. Reed.

**Ground 2(e):** The petitioner next faults his attorney for failing to object to the prosecutor's failure to disclose prior to trial all the witnesses it intended to call.  Specifically, he claims that his attorney was surprised by the introduction of DNA testing results by witness Terry Rolfe, from the State Crime Lab.  Again, Mr. Pinder states in his petition that the prosecution failed to provide the witness' name but concedes that the record does not contain any evidence to show the prosecution failed to disclose this witness.  *See Petition, page AR-8.*  The trial transcript *does* contain an Order dated August 6, 2002, directing the Arkansas State Crime Lab to provide the DNA test results to the trial court in anticipation of the trial, scheduled for August 20.  (Tr. 47).  Based upon the record before us, we conclude that the petitioner fails to establish the factual basis for his claim of ineffective assistance of counsel  – namely, that the state failed to disclose it intended to call a DNA expert.  The record suggests the contrary.  Absent an underlying factual basis, we find no merit in the claim that his attorney acted unreasonably under the circumstances.

**Ground 2(f):** Mr. Pinder claims counsel failed to request that each alleged act of each offense be charged separately.  Had counsel made this request, according to the petitioner, it would have been revealed that some acts occurred outside of Arkansas and the court would have been without jurisdiction of these acts.  The facts adduced at trial are clear: the victim testified that her stepfather raped her in at her home beginning at the age of eleven (Count 1 of the

information dealt with the time period before the victim was fourteen) and continuing until after she was fourteen (Count 2 of the information dealt with the time period after the victim was fourteen).  (Tr. 257, 260).  While it is true that the victim testified that Mr. Pinder also raped her while on a trip to Washington, D.C., this fact would not negate her testimony of repeated[3] rape within her home.  (Tr. 273).  The asserted failure to request that each act be charged separately would not have aided in petitioner's defense since the facts support the crimes as charged.  Had petitioner's attorney insisted on charging each act separately, the information could have expanded to thirty or more counts of rape rather than the two counts actually charged.  It was, accordingly, reasonable behavior for the attorney to act as he did.  We find no factual or legal basis for this claim.

**Ground 2(g):**  The petitioner claims trial counsel was ineffective for failing to seek a severance of the offenses.  He argues that the failure to seek a severance "prejudiced the petitioner because it prevented preparation of a defense, prevented proper information on how the alleged crimes were committed, where the alleged offenses occurred."  Petition, page AR-11.  The facts do not support the petitioner's version of the events.  The record leaves little doubt that the petitioner and his attorney were able to discern precisely the charges against Mr. Pinder.  In fact, the petitioner was aware of the allegations even *before* the information was filed, as an investigator with the Arkansas State Police testified that she explained to Mr. Pinder on the day the allegations were first made by his stepdaughter that he could not take her home from school.  The investigator, Emily Hampton, testified that she explained the specific allegations made against him by his stepdaughter.  (Tr. 148-9).  The facts supporting the two counts were similar, changed only by the date on which the acts occurred.  It was not unreasonable for the attorney to proceed as he did, and seeking a severance of the two counts would not have had any effect on the result of the proceedings.

---

[3]The victim testified that her stepfather had intercourse with her more than ten times and performed oral sex on her more than twenty times.  (Tr. 263-4).

**Ground 2(h):** Mr. Pinder alleges his attorney was ineffective for failing to object to the introduction of a hand drawn card created 15-16 years before trial by his biological daughter. Vonnie Pinder, the petitioner's daughter, testified that he sexually abused her for a two year period when she was six to eight years old. (Tr. 236). She testified that Mr. Pinder wrote the words "hand" and "mouth" on an Easter card that she had when she was being abused. The writing was intended to give the daughter the choice of which act she would perform, according to the daughter. This card was introduced at trial. (Tr. 243). The petitioner faults his attorney for failing to object to the card's introduction. Again, the trial transcript shows a different version of the facts. The petitioner acknowledges that the record shows his attorney objected but contends "this objection never occurred." Petition, page AR-12, and Tr. 239, 243. The Court will not assume either omissions from or additions to the trial transcript. The record shows an objection, which was overruled. There is no merit to this claim.

**Ground 2(I):** Petitioner contends his attorney was ineffective in failing to seek a mistrial or an admonition to the jury based upon questions by the state which infringed upon his right against self-incrimination. Emily Hampton, a State Police Investigator, indicated that she explained to the petitioner the allegations made against him on the day his stepdaughter described these acts to her school counselor. The prosecutor asked Hampton, "Did he deny the allegations that had been made?" and she responded in the negative. (Tr. 149). Citing *Doyle v. Ohio*, 426 U.S. 610 (1976), the petitioner maintains that his attorney should have objected to this exchange. Even if we assume[4] that the petitioner is correct in criticizing his attorney's failure to act, it does not follow that he is entitled to relief. A violation of *Doyle v. Ohio* can be harmless error. The Eighth Circuit Court of Appeals provides guidance:

> There is no doubt that eliciting testimony that the defendant invoked his
> constitutional rights is a violation of due process. *Doyle v. Ohio, supra.* The court

---

[4]We note that *Doyle v. Ohio* dealt with post-arrest silence, which is distinguishable from this instance, where the petitioner's silence occurred pre-arrest.

> in *Doyle* recognized, however, that application of the harmless error doctrine will
> be appropriate in some cases.
>
> The scope of the harmless error doctrine was announced in *Chapman v.
> California, supra,* where the court stated: "We conclude that there may be some
> constitutional errors which in the setting of a particular case are so unimportant
> and insignificant that they may, consistent with the Federal Constitution, be
> deemed harmless, not requiring the automatic reversal of the conviction." 386
> U.S. at 22, 87 S.Ct. at 827. In determining whether the alleged error is harmless,
> "[t]he question is whether there is a reasonable possibility that the evidence
> complained of might have contributed to the conviction." *Chapman v. California,
> supra,* at 23, 87 S.Ct. at 827, citing *Fahy v. Connecticut,* 375 U.S. 85, at 86-87, 84
> S.Ct. 229, at 230, 11 L.Ed.2d 171 (1963).

*Hobbs v. Lockhart*, 791 F.2d 125, 130 (8ᵗʰ Cir.1986).  Even if we presume an error in this

instance, we further conclude it to be harmless given the minimal contribution this testimony

added to the trial.  The petitioner's convictions rested primarily on the victim's testimony and the

DNA evidence.  The single statement of Emily Hampton was far from pivotal.  There is no merit

to this claim of ineffective assistance of counsel.

**Ground 2(j):** Mr. Pinder next argues his attorney failed to object when the trial court

erroneously failed to instruct the jury by excluding the element of "forcible compulsion" with

respect to Count 1 of the information.  As cited by the Arkansas Supreme Court in its opinion on

direct appeal, the pertinent statute does not require that the act be performed by forcible

compulsion *and* upon a victim less than fourteen years old.  Ark. Code Ann. § 5-14-103.  Instead,

the statute provides that the crime is committed if by forcible compulsion *or* upon a victim less

than fourteen years old.  It was not error to instruct the jury in a manner consistent with the

Arkansas code.  In addition, had the petitioner's attorney objected to the instruction and received

an instruction which included "by forcible compulsion," the evidence still would have supported

the conviction under Count 1.  As a result, we find the attorney acted reasonably and no prejudice

accrued to the petitioner even if the attorney should have lodged an objection.

**Ground 2(k):** The petitioner faults his attorney for failing to object during opening

arguments when the prosecutor stated that petitioner was having sex with the victim "long before

she reached the age of fourteen." Petition, page AR-15. At trial, the victim testified that her

stepfather raped her before she was fourteen by placing his finger in her vagina. See Tr. 263, and

Ark. Code Ann. § 5-14-101. She further testified that her stepfather began raping her by penile

penetration after the age of fourteen. (Tr. 263). If we were to assume petitioner's counsel knew

during opening arguments that the victim would testify to having sex with petitioner only after

the age of fourteen, and further assume that he objected to the opening argument, then *Strickland*

*v. Washington's* second prong requires the Court to determine if there is a reasonable probability

that such an objection would have affected the result of the trial. We find such an objection

would have no impact on the trial. Cast in its most favorable light, such an objection would be

only a technical victory. A jury would still be faced with the horrific testimony of the victim that

her stepfather digitally penetrated her before she reached the age of fourteen. There is no merit to

this argument.

   **Ground 2(l):** Petitioner next argues that he was denied his right to a fair trial when

testimony was allowed to be introduced to the jury under the "pedophile exception" to Arkansas

Rule of Evidence 404(b) and the court failed to issue a proper jury instruction concerning the use

of such testimony. This issue, though included among the many sub-parts of ground two, is not

couched in terms of ineffective assistance of counsel. Rather, Mr. Pinder simply states that he

was denied his right to a fair trial due to the introduction of testimony from his sister and his

daughter. Petitioner's attorney attempted to exclude this testimony by filing a motion prior to the

trial[5]. The trial judge allowed the testimony. This claim is, in essence, a challenge to whether

the trial judge's ruling denied Mr. Pinder due process.

> In order to establish a denial of due process, the petitioner must prove that
> the asserted error was so gross, *Taylor v. Minnesota*, 466 F.2d 1119, 1121 (8th Cir.
> 1972), *cert. denied*, 410 U.S. 956 (1973), conspicuously prejudicial, *United States*
> *ex rel. Cannon v. Maroney*, 373 F.2d 908, 910 (3rd Cir. 1967), or otherwise of such

---

[5]Petitioner's attorney also sought to exclude evidence that pornographic material involving
teenage girls was viewed on the petitioner's computer. (Tr. 43-44). This motion proved
successful.

> magnitude that it fatally infected the trial and failed to afford the petitioner the
> fundamental fairness which is the essence of due process. *Lisenba v. California*,
> 3l4 U.S. 2l9 (l94l). In making this determination, the courts must review the
> totality of the facts in the case pending before them and analyze the fairness of the
> particular trial under consideration.

*Maggitt v. Wyrick*, 533 F.2d 383 (8th Cir. l976). Having reviewed the trial transcript, we find that even if we were to presume the trial judge erred in allowing the testimony the error would not be one which "fatally infected" the trial. Instead, as previously noted, the damning evidence of the specific and thorough testimony of the victim, coupled with the DNA evidence, was more than ample to prove the petitioner's guilt. The trial judge's ruling allowing additional evidence of bad acts did not deny Mr. Pinder his due process rights.

**Ground 2(m):** Petitioner argues that he received ineffective assistance of counsel in that his attorney did not nor could not prepare a defense to the charged crimes. He complains that his appointed attorney did not respond to telephone calls, did not file a motion for bill of particulars, failed to pursue the state's failure to disclose discoverable evidence, failed to seek and examine the state's witnesses, and failed to seek an investigative report of the alleged wrong acts evidence. This argument fails. Under the second prong of the *Strickland v. Washington* analysis, the petitioner must show how he was prejudiced by the alleged acts and omissions of his attorney. For example, he must show how the failure to file a motion for bill of particulars would have changed the result of the trial. We find no prejudice accrued to the petitioner even if we were to presume some unreasonable behavior on the part of the trial attorney. The trial transcript reveals that petitioner's appointed counsel filed a number of pretrial motions and does not support the petitioner's factual assertions. While counsel is charged with preparing and mounting a zealous defense, the facts in this case provided the attorney with few options, and counsel cannot be faulted for failing to invent a defense. This claim is without merit.

**Ground 2(n):** Mr. Pinder states that his counsel was ineffective for failing to preserve and present for appellate review a true, accurate and complete record. Petitioner complained in

state court and continues to urge that the record was inaccurate.  He contends that portions of the record were omitted (such as the alleged statement of his attorney threatening him with a life sentence unless he entered a guilty plea) and portions were added (such as his claim that the record contains an objection his counsel did not actually make at trial to the introduction of the "Easter card").  The alleged omissions and additions, even if presumed, do not get to the heart of the evidence against Mr. Pinder.  For example, he does not allege the victim's testimony was distorted by any alleged error in the record.  Even if his attorney had objected to the alleged trial record errors and won relief, the basics of the case against Mr. Pinder (testimony of the victim supported by circumstantial and DNA evidence) remain.  Thus, he can show no prejudice stemming from the asserted behavior of his attorney, and there is no merit to this charge of ineffective assistance of counsel.

**Ground 2(o):** The petitioner next faults his trial attorney for failing to preserve for appellate review that four female jurors were allowed to sit on the panel even though they or someone else in their family had been raped as a child and this would affect their judgment.  Mr. Pinder again asks the Court to assume facts not in the record; namely, that four jurors indicated to the trial judge that they or their family had experienced the rape of a child and that this experience would cloud their judgment.  In the absence of any document or affidavit to suggest this occurred at trial, the Court is in no position to simply accept Mr. Pinder's version of the voir dire.[6]  While this is an ingenious[7] argument offered by the petitioner, the Court declines to entertain issues that require us to embrace a version of facts not contained in the record.

---

[6]The transcript shows the list of ninety-one prospective jurors, the eighteen jurors selected for Pinder's trial, and the twelve who ultimately served on the jury.  (Tr. 83-90).  It appears that the jury was composed of five or six men, and either six or seven women.
     Had the prospective jurors testified as indicated by Mr. Pinder, the trial judge would have been obliged to remove them for cause.

[7]In reviewing his Rule 37 allegations, the state court characterized Mr. Pinder's version of the facts as "incredulous."

**Ground 2(p):** This claim is akin to the previous ground, in that the petitioner states that an event occurred which was omitted from the record.  In this instance, Mr. Pinder claims that his attorney, in open court, stated that he would see to it that Pinder would receive a life sentence if Pinder did not enter a guilty plea.  There is no evidence that this occurred, and the Court again declines to act on the unsupported version offered by Mr. Pinder.  Relief is not available for conclusory allegations such as these.

**Ground 2(q):** The petitioner claims he received ineffective assistance of counsel when his attorney failed to file a motion to suppress evidence after the state failed to surrender the evidence in a timely fashion.  Mr. Pinder claims that the results of DNA tests were to have been given to the defense in advance of the trial but were not delivered until four days before the August 20, 2002, trial.  The record shows the trial court entered an Order on August 6, 2002, directing the State Crime Lab to deliver the DNA test results by August 9.  (Tr. 47).  Although the State Crime Lab did not comply until a week after the deadline, the pertinent question under the *Strickland* analysis is whether petitioner's attorney acted unreasonably in failing to file a motion to suppress.  We find that he did not.  The State Crime Lab, not the prosecutor, was in control of the results and already under Court Order to provide them.  There is no suggestion of prosecutorial misconduct in the delay in receiving the results, and there was no reasonable expectation that a motion to suppress would have been successful.

Even if petitioner's attorney had filed such a motion, it is clear that the trial's result would not have changed.  Petitioner concedes that he received the results of the DNA tests four days prior to trial.  His own testimony at trial reflects that he was not surprised by the test results.  There is no merit to this claim.

**Ground 2(s):** Mr. Pinder next claims that he was denied effective assistance of counsel when his attorney failed to preserve for appellate review that the prosecutor lied to the trial court about the existence of audio or video tapes and then withheld the evidence from the defense.  The

petitioner concedes that the state provided a typed transcript of interviews conducted by the state

police, but he further asserts that an audio or video tape was withheld and these tapes were

"material to guilt or punishment."  Petition, page AR-26.

We return to the overwhelming evidence against the petitioner, including the testimony of

the victim and the corroborating evidence.  The petitioner asks the Court to assume a great deal,

including the existence of audio or video tapes.  There is no reason to believe that if such tapes

existed they would have contradicted the transcribed statements given to the petitioner, or would

have contradicted the testimony of the witnesses at trial.  There is no merit in this imaginative

claim submitted by Mr. Pinder.

**Ground 2(t):** Mr. Pinder argues that his attorney failed to preserve for review that the

trial court, on its own, moved the trial date and gave the state an unfair advantage over the

petitioner.  He reasons that it was unfair of the trial judge to move the trial, which allowed time

for the State Crime Lab to provide the DNA test results.  We find no merit here.  Even if his trial

attorney had moved to commence the trial prior to the return of the DNA results, such a motion

would have been denied.  Mr. Pinder was not entitled to a trial without the DNA test results, and

it was not an "unfair advantage" for these results to be admitted at trial.  His attorney did not act

unreasonably.

**Ground 2(u):** Petitioner urges that his attorney was ineffective for failing to preserve for

appellate review that the state failed to provide him with a bill of particulars.  This failure,

according to Pinder, prejudiced his ability to prepare a defense.  Lacking in his argument is *how*

his defense was prejudiced.  The petitioner knew prior to the filing of the information that he was

alleged to have raped his stepdaughter.  The information cited the rape statute and notified him of

the time periods during which the rapes were to have occurred.  (Tr. 4-5).  Mr. Pinder bears the

burden of showing how he was prejudiced by the absence of a motion for bill of particulars.  It is

not enough to state that he was harmed.  In summary, he fails to carry his burden of showing both

20

that his attorney should have acted differently and that he was prejudiced by his attorney's acts or omissions.

**Ground 2(v):** "Counsel was ineffective in that counsel failed to submit the states case to the adversarial testing envisioned by the Sixth Amendment and even failed to cross-examine the only witness that could connect petitioner to the alleged crime." Petition, page AR-28. The general assertion that petitioner's counsel was not adversarial is rebutted by the trial transcript, which shows that he filed pre-trial motions and put on a defense under difficult circumstances. The specific assertion that he did not cross-examine the victim is true. However, it does not follow that this was unreasonable behavior on the part of Pinder's attorney. Mr. Pinder does not suggest how his attorney could have effectively cross-examined the victim. The abundance of evidence against Mr. Pinder left his attorney with few options. We find no fault in his decision not to cross-examine the victim. Even if he had cross-examined her, the result of the trial would not have been different. There is no merit to this claim.

In summary, the defense of denial chosen by Mr. Pinder was not likely to have won him an acquittal. In fact, the record suggests it was unlikely that this defense would have swayed even one juror and resulted in a hung jury. Still, there is no other apparent defense that was available to him under the circumstances. Mr. Pinder falls far short of showing that his counsel's performance influenced the verdicts; instead, the verdicts reflect the powerful evidence adduced at trial.

**Ground 3:** Petitioner claims that his appellate counsel was ineffective for failing to perfect an appeal, failing to abstract the record, and failing to preserve and present a true and accurate record of the trial court proceedings. Many of these assertions have already been addressed. We consider this claim using the *Strickland v. Washington* formula, and we find the claim without merit. As with many of the preceding claims, Mr. Pinder claims to have been prejudiced but fails to indicate how the direct appeal would have been a reversal if his attorney

21

had acted exactly as Pinder claims he should have.  We find that the result of the direct appeal would not have changed even if the petitioner's attorney had acted differently.  The second prong of *Strickland* has not been met, and this claim is without merit.

**Ground 4:** Mr. Pinder claims he was denied due process due to the alleged unprofessional acts of counsel.  To the extent that this is an attempt to advance yet another claim of ineffective assistance of counsel, we deny relief, having already addressed those claims.  To the extent that this is a due process claim, it is denied as having no factual or legal basis.  *See Maggitt v. Wyrick*, 533 F.2d 383 (8th Cir. l976).

**Ground 5:** The petitioner claims that he was denied a fair trial when the state introduced evidence of bad acts that occurred fifteen to twenty-five years prior to the trial.  We have already addressed this claim.  See Ground 2(l).

**Ground 6:** Petitioner argues that the state appellate court's decision to deny postconviction relief was an unreasonable application of clearly established United States Supreme Court precedent.  Mr. Pinder cites *Strickland v. Washington* and other cases as the precedent which was unreasonably applied.  In other words, Mr. Pinder asks the Court to assume that he has proven he received ineffective assistance of counsel.  The flaw with this argument is that he has not carried his burden and proved any violation of his constitutional right to effective counsel.  It therefore follows that *Strickland* was not unreasonably applied.

**Ground 7:** Petitioner alleges he was denied due process during the postconviction proceedings.  He supports this claim with nothing more than general assertions.  We have already addressed the numerous claims of ineffective assistance, which are claims that are cognizable in Arkansas postconviction proceedings, and found them without merit.  Thus, we agree with the findings of the Arkansas trial and appellate court.  The petitioner appears to ask us to find error in the manner in which the Arkansas courts reached their conclusions even though we agree with

their ultimate decision.  We find no due process violation in either the procedure used by the Arkansas courts or the decision rendered by those courts in the postconviction proceedings.

**Ground 8:** For his eighth claim, Mr. Pinder asserts that he was denied due process of law during the postconviction appeal, in that the record of the postconviction proceedings was not presented to the appellate court.  As previously noted, however, the Arkansas Supreme Court found as follows:

> The record does not indicate that there was a hearing on the Rule 37.1 petition. The trial court's order does not specify the parts of the file or record relied upon and is not adequate under Rule 37.3.  We therefore examine the record to determine if it conclusively shows that the petition was without merit.

Respondent's Exhibit E to docket entry no. 14, page 3.  The Arkansas Supreme Court, after examining the entire record, found no merit in any of the claims.  While the Arkansas Supreme Court found some deficiency in the record, the Court's examination of the entire trial transcript cured any errors.  The ultimate decision of the state courts was correct.  We have reviewed the entire trial transcript and reached the same conclusion.  There is no merit to the petitioner's eighth claim for relief.

**Ground 9:** For his final claim, the petitioner contends the trial court's order denying postconviction relief denied him due process.  The petitioner is correct that the trial court failed to follow state court rules that dictated the trial court make findings of fact in its Rule 37 decision.  However, the trial court's failure to follow a state court rule does not necessarily mean that Mr. Pinder was denied due process.  In this instance, the Arkansas Supreme Court cured the trial court's error by examining the entire record.  Further, this Court has examined the trial transcript and found no merit to the claims of ineffective assistance of counsel.  There is no merit to this claim.

**Summary:** Mr. Pinder's numerous claims for habeas corpus relief focus primarily on the alleged failings of his trial counsel, although he often packages these ineffective assistance of

counsel claims as due process arguments.  These claims, regardless of how presented, tend to focus on marginal events and ignore the main message of the trial – petitioner's stepdaughter testified[8] to several years of sexual abuse, and this testimony was buttressed by DNA evidence. The circumstantial evidence, such as the manner in which the rapes were discovered, was believable.  The petitioner, who did not have a criminal record to explain, chose to testify at the trial, offering a general denial.  His testimony was unbelievable.  The character witnesses he offered added little.  Though this defense did not work, he does not suggest a better option.  The record suggests a better option did not exist.  The multitude of errors which the petitioner asserts are without merit.

Based upon the foregoing, we recommend that the petition for writ of habeas corpus be dismissed with prejudice and the relief requested be denied.

IT IS SO ORDERED this  1   day of September, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

---

[8]In Arkansas, the testimony of the victim alone is sufficient to support a rape conviction. *Laughlin v. State*, 316 Ark. 489, 495 (1994).

24